IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES A. W., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 18 C 6634 |
| v. | ) |
| | ) Magistrate Judge Gabriel A. Fuentes |
| ANDREW M. SAUL, Commissioner | ) |
| of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER[2]

In June 2015, Plaintiff, James A. W.,[3] filed applications for disability benefits, alleging he became disabled on December 15, 2014, at the age of 42, due to herniated discs, back pain and partial blindness. (R. 257-64, 294.) After his claims were denied initially and on reconsideration, Plaintiff received two hearings before an Administrative Law Judge ("ALJ"), the second one after

---

[1]The Court substitutes Andrew M. Saul for his predecessor, Nancy A. Berryhill, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[2]On December 6, 2018, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to a United States Magistrate Judge for all proceedings, including entry of final judgment. (D.E. 12.) On May 31, 2019, this case was reassigned to this Court for all proceedings. (D.E. 27.)

[3]The Court in this opinion is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court. IOP 22 presumably is intended to protect the privacy of plaintiffs who bring matters in this Court seeking judicial review under the Social Security Act. The Court notes that suppressing the names of litigants is an extraordinary step ordinarily reserved for protecting the identities of children, sexual assault victims, and other particularly vulnerable parties. *Doe v. Vill. of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016). Allowing a litigant to proceed anonymously "runs contrary to the rights of the public to have open judicial proceedings and to know who is using court facilities and procedures funded by public taxes." *Id.* A party wishing to proceed anonymously "must demonstrate 'exceptional circumstances' that outweigh both the public policy in favor of identified parties and the prejudice to the opposing party that would result from anonymity." *Id.*, citing *Doe v. Blue Cross & Blue Shield Unites of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997). Under IOP 22, both parties are absolved of making such a showing. Put to such a showing here, a party may well be able to demonstrate that suppressing the surname of the plaintiff inflicts little or no prejudice upon the government defendant, but establishing that the circumstances favoring privacy are so exceptional as to outweigh the public policy in favor of identified parties would be more challenging. In any event, the Court is abiding by IOP 22 subject to the Court's concerns as stated. The Court's understanding is that the claimants are not anonymous litigants, in that their names in all of these matters brought for judicial review under the Social Security Act are otherwise available upon a review of the public docket.

Plaintiff submitted additional evidence. (R. 15.) On September 22, 2017, the ALJ denied his applications for benefits. The Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. *See Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Plaintiff moved to remand the Commissioner's decision denying his applications for disability benefits (D.E. 19), and the Commissioner has moved to affirm. (D.E. 28.) For the following reasons, the Court grants Plaintiff's motion and denies the Commissioner's motion.

I. **Administrative Record**

Plaintiff last worked in December 2014, when he was injured while operating a "cherry picker," a mechanical device used to reach high boxes; a loose box fell and hit him on his left side. (R. 45, 50-51.) Plaintiff had three weeks of physical therapy without relief from sharp lumbar (lower) left back pain. (R. 434.) On February 5, 2015, Scott E. Glaser, M.D., a pain specialist, diagnosed Plaintiff with lumbar facet syndrome (pain in the lumbar facet joint) and prescribed tramadol (a narcotic) for his pain. (R. 433-34.) On February 15, 2015, Plaintiff went to the Emergency Department ("ED") complaining of lower left back pain, and he was prescribed cyclobenzaprine (Flexeril, a muscle relaxant) for muscle spasms, tramadol and ibuprofen (800 mg). (R. 388-90.) An MRI on February 17 showed facet degeneration, disc herniation (protrusion) and narrowing at multiple levels of Plaintiff's lower spine. (R. 455.)

On March 10, 2015, Dr. Glaser performed facet joint injections at three levels in Plaintiff's left lower spine to address his pain (R. 452), and on March 31, Dr. Glaser followed up with medial branch blocks (nerve injections) at these levels. (R. 448.) On April 24, 2015, however, Plaintiff returned to the ED with complaints of severe lower left back pain; he was given Valium and a Toradol (a nonsteroidal anti-inflammatory drug) injection. (R. 385-86.) In May 2015, Plaintiff told Dr. Glaser that he had increased pain in his lower back and legs; taking tramadol and ibuprofen

2

improved his functionality and quality of life "moderately." (R. 437.) On examination, Plaintiff had mild to moderate tenderness in the lower left spine and limited extension and rotation. (R. 438.) Dr. Glaser performed radiofrequency ablation (radio waves targeting specific nerves to temporarily turn off their ability to send pain signals) on Plaintiff's lower spine. (*Id.*)

On July 23, 2015, Plaintiff told Dr. Glaser that his left lower back and bilateral leg pain had increased since May; his pain medication only reduced his pain by 30 percent. (R. 498.) Examination of Plaintiff's lower left spine showed moderate tenderness and his rotation and extension were limited and produced pain. (R. 499.) Dr. Glaser again ordered multiple lumbar facet injections, and he prescribed Plaintiff Norco (hydrocodone-acetaminophen, a narcotic) in addition to tramadol and ibuprofen. (*Id.*) On August 20, 2015, Plaintiff reported that the medication only "minimally" improved his pain and quality of life, and examination showed mild to moderate tenderness to palpation and limited and painful rotation and extension. (R. 532-33.) The following month, Dr. Glaser again injected medial branch blocks into Plaintiff's lumbar spine. (R. 533-34.)

On October 15, 2015, Plaintiff told Dr. Glaser that his lower back and leg pain had not improved with the medial branch blocks. (R. 526.) Plaintiff's lower left spine was mildly tender on examination and rotation and extension were limited and produced pain. (R. 527.) Dr. Glaser opined that Plaintiff's pain was primarily caused by injured discs in his back rather than his facet joints. (*Id.*) He performed transforaminal epidural steroid injections (at the nerve roots) to Plaintiff's lower back and prescribed oxycodone-acetaminophen (Percocet, a narcotic). (*Id.*) During this time period (August and November 2015), non-examining State agency medical consultants opined that Plaintiff could perform light work (lifting/carrying 20 pounds occasionally and 10 pounds frequently) and stand, walk or sit about six hours in an eight-hour work day, with only occasional stooping and climbing ramps and stairs. (R. 89-91, 111-12.)

3

In February 2016, Plaintiff visited orthopedic surgeon Mark J. Sokolowski, M.D., to discuss surgery to improve his back pain, which Plaintiff described as intolerable. (R. 547.) On April 20, 2016, Dr. Sokolowski performed spinal fusion surgery to connect Plaintiff's L3-4 vertebrae in his lumbar spine. (R. 551.) At a follow-up visit on June 15, Dr. Sokolowski noted that while Plaintiff's activity was improving with physical therapy, Plaintiff's pain level was at times so high that Norco did not provide adequate relief. (R. 977.) On examination, Plaintiff had full strength, but pain with flexion and extension and lumbar tenderness to palpation. (*Id.*)

On July 7, 2016, Plaintiff returned to Dr. Glaser. Although he reported 70 percent improvement since surgery, he still required opioids (Norco and Percocet) to control his pain. (R. 877.) On examination, Plaintiff had a normal gait, but showed moderate pain behavior and mild to moderate tenderness in his left mid and lower spine. (R. 878.) Dr. Glaser prescribed Plaintiff additional medications, including cyclobenzaprine, Ambien (sedative), Neurontin (gabapentin, nerve pain medication) and Mobic (a non-steroidal anti-inflammatory drug). (*Id.*)

On July 15, 2016, Plaintiff presented to the ED with new symptoms: sharp *upper* back pain that radiated to his left shoulder and neck, which was not relieved with Flexeril or Norco (R. 1061.) Although Plaintiff had normal range of motion, he had "exquisite" tenderness to palpation over his left shoulder; the ED doctor opined that Plaintiff had cervical (upper spine/neck) radiculopathy (pinched nerve). (R. 1063-64.) The following week, Dr. Sokolowski noted that physical therapy had decreased Plaintiff's lower left back pain, but that he had "new significant left-sided neck pain, trapezial pain, and periscapular pain" (muscles between shoulder and neck) with extension and palpation, although his strength and range of motion were intact. (R. 960.) On July 29, 2016, an MRI of Plaintiff's cervical spine showed posterior disc herniation at multiple levels and mild stenosis (narrowing of the spine) at the C5-C6 level. (R. 958.)

4

On August 4, 2016, Plaintiff visited Dr. Glaser for his left neck and upper extremity pain. (R. 879.) He reported that his pain interfered with his sleep and was worse with physical activity; he had to sit or lie down during the day. (*Id.*) On examination, Plaintiff's left lower and mid cervical regions were mildly to moderately tender, and his range of motion was limited and produced left neck pain. (R. 880.) Dr. Glaser ordered a left epidural steroid injection at C5-C6 and prescribed tramadol for pain control in addition to Plaintiff's current medications, which included cyclobenzaprine, Ambien, Neurontin, Mobic, Percocet and ibuprofen 800 mg. (R. 879-80.)

On September 6, 2016, Plaintiff reported to Dr. Sokolowski that he had severe neck pain despite receiving a cervical epidural injection, although his lumbar pain was well-controlled. (R. 943.) On examination, Plaintiff had full shoulder range of motion and intact upper extremity strength, but he showed considerable tenderness to palpation and pain with flexion and extension. (R. 944.) On October 14, 2016, Dr. Sokolowski's examination revealed similar results. (R. 937.)

On October 20, 2016, Plaintiff reported to Dr. Glaser that he was using Percocet and tramadol "around the clock" for his cervical pain. (R. 875.) On examination, Plaintiff had full range of motion but his left lower and mid cervical regions were mildly to moderately tender, and his left upper thoracic (mid-spine) region was mildly tender. (*Id.*) On November 10, Dr. Glaser gave Plaintiff another cervical epidural steroid injection. (R. 887.)

On December 6, 2016, Plaintiff reported to Dr. Sokolowski that the epidural had decreased his neck and shoulder pain to a 5 or 6 out of 10. (R. 932.) Examination showed mild left cervical and lumbar tenderness, full shoulder range of motion and intact strength throughout. (*Id.*) Dr. Sokolowski found it "diagnostically valuable and prognostically positive that each of two cervical epidural injections provided the patient some relief of radiculopathy," and he noted Plaintiff "appear[ed] to be approaching a functional plateau." (*Id.*) Dr. Sokolowski ordered a functional

capacity evaluation ("FCE") "to objectively delineate [Plaintiff's] capabilities and need for restrictions going forward," and recommended Plaintiff continue "his current analgesic regimen" as needed. (*Id.*)

On December 22, 2016, Plaintiff underwent a "job specific" FCE by Corrine M. Webb, PT, DPT (Doctor of Physical Therapy). (R. 915.) Dr. Webb found that Plaintiff "demonstrate[d] the physical capabilities and tolerances to function at the Medium physical demand level," and recommended that Plaintiff participate in a five-hour daily work conditioning program to increase his "overall physical capabilities and tolerances to prepare client for return to work." (*Id.*) Plaintiff exhibited decreased core stability, endurance and lower extremity strength during testing, but Dr. Webb opined that he "likely could have performed at higher levels than willing during musculoskeletal and functional testing." (R. 916.) Plaintiff's reported functional pain score was 1/10 before testing and 3/10 after testing. (R. 919.)

On January 4, 2017, Dr. Sokolowski observed Plaintiff continued to have mild pain in his left cervical and shoulder area and lumbar tenderness to palpation, but full shoulder range of motion and intact strength and sensation throughout. (R. 910.) He opined that Plaintiff was at his functional maximum medical improvement. (*Id.*) Based on the FCE, Dr. Sokolowski recommended that Plaintiff have permanent work restrictions of lifting no more than 20 pounds, pushing/pulling limited to 40 pounds and limited overhead lifting. (R. 911.)

On January 11, 2017, Dr. Sokolowski filled out a form entitled "medical assessment of condition and ability to do work-related activities," in which he further limited Plaintiff to pushing/pulling up to 20 pounds with limited ability to reach, grasp, handle and manipulate. (R. 1457-58.) Dr. Sokolowski opined Plaintiff could sit/stand/walk for one hour uninterrupted and four hours total in an 8-hour workday, but that he would need to lie down intermittently throughout the

day "to relieve symptoms." (R. 1457.) He further opined that side effects from Plaintiff's narcotic pain medications, including drowsiness and fatigue, could reasonably be expected to further diminish his ability to walk, stand or sit upright. (R. 1458.) In addition, Dr. Sokolowski checked "yes" to indicate Plaintiff's symptoms would cause marked limitation in his ability to complete a normal workday/week without interruption, marked limitation in his ability to perform at a consistent pace without an unreasonable number and length of rest periods, and significant deficiencies in sustained concentration, persistence and pace. (*Id.*)

## II. Administrative Hearings

On December 28, 2016, Plaintiff appeared at a hearing before the ALJ. He testified that due to his neck and back pain, he could lift and carry a maximum of 15 pounds, he could only stand for 30 minutes before needing to sit for about 20 minutes, and he could only sit for 40 minutes before needing to get up and walk around for about 10 minutes. (R. 53-54.) Plaintiff also testified that he was "constantly in pain," took medication "around the clock," did not sleep due to pain, and had tingling, numbness and burning in his left arm and shoulder. (R. 55-56, 58.)

On May 17, 2017, Plaintiff appeared at a supplemental hearing before the ALJ after submitting additional records. (R. 62.) Plaintiff testified that he did not understand how the FCE found he could perform medium work because he was in "constant pain," could "barely lift [his] leg up to even tie [his] shoe," and "[w]ithout medication, [he could] barely even make it through a full day." (R. 70.) He took narcotic medication twice per day, which made him sleepy. (R. 71-72.) Plaintiff testified that he had to lie down for 45 to 60 minutes about every other hour to relieve pressure off his lower back from sitting or standing too long, and he mostly stayed in bed 10 to 12 days per month due to pain. (R. 70, 73, 75.)

7

The ALJ presented the vocational expert ("VE") with hypotheticals involving medium and light work. The second hypothetical involving light work was also limited to occasional overhead reaching, frequent forward reaching, and a sit/stand option where the individual could shift positions every 30 minutes if necessary. (R. 79-81.) The VE opined that this hypothetical allowed mostly sedentary work, including surveillance monitor, bench hand worker and table worker. (R. 81.) She stated that no full-time work would be available for someone who needed to recline for 20 minutes every hour. (R. 82.)

### III. ALJ's Decision

On September 22, 2017, the ALJ issued a written opinion finding that Plaintiff was not under a disability within the meaning of the Social Security Act from December 15, 2014, his alleged onset date, through the date of the opinion. (R. 16.) At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity during this time period. (R. 17.) At Step Two, the ALJ found that Plaintiff had the severe impairment of degenerative disc disease,[4] and at Step Three, the ALJ determined that Plaintiff's impairments did not equal the severity of a listed impairment. (R. 17-18.) Next, the ALJ assigned Plaintiff a residual functional capacity ("RFC"):

> to perform sedentary work as defined in 29 C.F.R. 404.1567(a) and 416.967(a) except he can never climb ladders, ropes, or scaffolds, and can only occasionally stoop, kneel, crouch, crawl, or climb ramps or stairs. He can only occasionally reach overhead with his bilateral upper extremities, and can frequently, but not continuously, reach forward with his bilateral upper extremities. He requires the option to alternate between sitting and standing every 30 minutes if necessary.

(R. 19.)

The ALJ reviewed Plaintiff's testimony and found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's

---

[4]The ALJ also determined that Plaintiff's obesity and single-eye blindness were not severe impairments. Neither Plaintiff nor the medical record focused on either of these issues.

8

statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . ." (R. 19.) The ALJ reviewed the medical record and concluded that it showed that "[a]lthough the claimant experiences a range of exertional, postural, and manipulative limitations as a result of his impairments," and "although spinal tenderness and lumbar and shoulder range of motion deficits have been document[ed], he has consistently retained normal strength, reflexes, coordination, gait, muscle tone, and sensation, with no other documented focal neurological deficits." (R. 23.) In addition, the ALJ noted that symptoms of Plaintiff's cervical radiculopathy were mild in January 2017, and Plaintiff had consistently full shoulder range of motion, strength and sensation. (*Id.*)

The ALJ gave "great weight" to the conclusions reached in Plaintiff's December 2016 FCE. (R. 23.) She reasoned that "this report was the result of a detailed and comprehensive clinical examination, and the justifications for its various conclusions and limitations are all well supported by specific observations." (*Id.*) By contrast, the ALJ gave "little weight" to Dr. Sokolowski's January 2017 functional assessment. (R. 24.) The ALJ determined that there was no objective evidence in the record to support Dr. Sokolowski's finding that Plaintiff's symptoms had an impact on his concentration or resulted in severe fatigue. (*Id.*) In addition, the ALJ found that Dr. Sokolowski's assessment was inconsistent with the FCE and with Dr. Sokolowski's "own concurrent progress notes," which observed only mild symptoms of cervical radiculopathy, full bilateral shoulder range of motion, intact strength and sensation, and normal gait. (*Id.*)

At Step Four, the ALJ found that Plaintiff was unable to perform his past work, but that at Step Five, jobs existed in significant numbers in the national economy that Plaintiff could perform at the sedentary level. (R. 24-25.) Thus, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act. (R. 25.)

IV.  Analysis

The Court's review of the ALJ's decision "is deferential; we will not reweigh the evidence or substitute our judgment for that of the ALJ." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). "The ALJ's decision will be upheld if supported by substantial evidence, which means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk*, 923 F.3d at 496 (internal citations and quotations omitted). "An ALJ need not address every piece of evidence, but he must establish a logical connection between the evidence and his conclusion," *i.e.*, "build an accurate and logical bridge" between the evidence and his conclusion. *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017).

In this case, the ALJ's decision was not supported by substantial evidence. The ALJ extensively reviewed the treatment Plaintiff underwent with Dr. Glaser and Dr. Sokolowski, including physical therapy, multiple narcotic pain medications, muscle relaxants, epidural joint and nerve injections, and ultimately, surgery. The ALJ recognized that Plaintiff "experiences a range of exertional, postural, and manipulative limitations," and that his physicians documented spinal tenderness and range of motion deficits. (R. 23.) However, the ALJ concluded that Plaintiff was not precluded from working because "[t]hroughout the relevant time period, . . . he has consistently retained normal strength, reflexes, coordination, gait, muscle tone, and sensation, with no other documented focal neurological deficits," and the FCE and Dr. Sokolwski's January 2017 progress notes showed only mild limitation. (*Id.*) But the ALJ's analysis was inadequate because she failed to address adequately the evidence of Plaintiff's back pain.

The Court "will overturn an ALJ's adverse credibility determination only if it is unsupported by substantial evidence or rests on legally improper analysis." *Lambert v. Berryhill*, 896 F.3d 768, 777 (7th Cir. 2018). In *Lambert*, the Seventh Circuit held that the ALJ wrongly

discredited the claimant's testimony about the severity of his back pain and related functional limitations because the ALJ stressed medical examinations showing the claimant had "no atrophy or deficits in motor, strength, or sensory abilities," even though "none of [the claimant's] physicians interpreted these medical findings as inconsistent with his reports of recurrent and worsening pain and functional limitations" and they continued to treat his pain. *Id.* In addition, the Seventh Circuit held that the ALJ erred by failing to recognize that the claimant "ha[d] undergone painful and risky procedures in attempts to alleviate his pain, actions that would seem to support the credibility of his claims regarding the severity of his pain." *Id.* at 778.

Similarly, in *Plessinger v. Berryhill*, 900 F.3d 909, 914 (7th Cir. 2018), the Seventh Circuit determined that the ALJ erred because he "never fully engaged with the evidence supporting [the claimant's] claim of disabling pain." An ALJ is required to address evidence that a claimant's "allegations of pain were consistent with the strong prescription pain medication he was taking." *Id.* at 916. *See also Hardy v. Berryhill*, 908 F.3d 309, 312 (7th Cir. 2018) (holding that the ALJ erred by stressing that the claimant's treating physician had observed that the claimant's balance, gait, motor skills, reflexes and coordination were normal, but failing to "engage" with the doctor's observations that lent support to the claimant's claim of disability in his back).

The ALJ committed similar errors in this case. Despite the normal findings noted by the ALJ, between December 2014 and April 2016, and between July and December 2016, Dr. Glaser continuously treated Plaintiff with multiple strong pain medications and epidural joint and nerve injections for severe pain first in his lumbar spine and then in his cervical spine. Plaintiff was taking 800 mg of ibuprofen, a muscle relaxant, and multiple narcotic drugs including tramadol, Norco, and Percocet, to address pain in his lumbar spine up until he underwent surgery because medication did not alleviate his pain. However, the ALJ did not mention that Plaintiff was on this

11

regimen of heavy pain medications for almost one and a half years. The ALJ only noted that Plaintiff underwent injections in his lumbar spine and that in April 2015, Plaintiff had "been taking ibuprofen and tramadol for his pain, with no relief." (R. 20.)

Moreover, after Plaintiff underwent surgery and developed cervical radiculopathy pain, Dr. Glaser prescribed him additional pain medications, including Neurontin and Mobic, as well as Ambien, to help Plaintiff sleep despite his pain. However, the ALJ did not mention the addition of these serious pain medications in the summer of 2016. Rather, the ALJ noted only that Plaintiff underwent two cervical epidural steroid injections in the fall of 2016 before concluding that Plaintiff's cervical radiculopathy had improved. (*See* R. 22-23.)

Therefore, the Court finds that the ALJ failed to build a logical bridge between her conclusion that Plaintiff was not precluded from working "throughout the relevant time period" and the years of treatment Plaintiff received for severe pain.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion to remand the Commissioner's decision (D.E. 19) and denies the Commissioner's motion to affirm. (D.E. 28.)

ENTER:

GABRIEL A. FUENTES
**United States Magistrate Judge**

DATED: February 18, 2020